IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DONALD LEE BOWERS                                    PLAINTIFF

            v.                Civil No. 04-2102

DEPUTY CLARKE, DEPUTY STATEN,
DEPUTY SCHUCH, and CORPORAL GIBSON           DEFENDANTS

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Donald Lee Bowers brings this pro se civil rights action under 42 U.S.C. § 1983. He contends that his constitutional rights were violated while he was detained at the Sebastian County Detention Center.

On March 10, 2005, the defendants filed a motion for summary judgment. (Doc. 16.) By ordered entered on March 23, 2005 (Doc. 19), Bowers was directed to complete, sign, date, and return an attached questionnaire, which would serve as his response to the defendants' motion for summary judgment. On April 21, 2005, plaintiff's response was filed. (Doc. 20.) The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

### **I. Background**

Bowers was booked into the Sebastian County Detention Center (SCDC) on January 11, 2005, as a pretrial detainee on charges of Aggravated Robbery, Possession of Methamphetamine with Intent to Deliver, and Possession of Drug Paraphernalia. (Doc. 20 at ¶ 1.) On February 11, 2004 at approximately 2:15 p.m., Thorin Henley, a fellow inmate, attacked Bowers. (Doc. 20 at ¶ 3.) Bowers notified Deputy Staten that he had been attacked, and Staten sent Bowers to the

booking area of the SCDC. (Doc. 20 at ¶ 5.) Bowers requested access to the nurse from Staten, but Staten informed him that the nurse was not at the jail at that time, but that Bowers could see the corporal. (Doc. 1.) After arriving at the booking area, Corporal Gibson looked at Bowers and stated to him that he only had a black eye and did not need to see a nurse. (Doc. 20 at ¶ 6.) Bowers contends that he told Gibson that he wanted to see the nurse because his teeth and gums were bleeding and hurting. (Doc. 1.)

The next day, Bowers submitted a written request to see the nurse through Deputy Schuch. (Doc. 20 at ¶ 7.) On February 13. 2004, Bowers's mother visited him, and after seeing him, she returned home and called "someone in charge" about Bowers's condition. (Doc. 1.) That afternoon, Bowers was taken to Nurse Crystal White (who is not a defendant) who examined Bowers's swollen jaw and loose teeth and referred him to a dentist. (Docs 1 and 20 at ¶ 8.)

On February 13, 2004, Bowers was examined and treated by Dr. Clemmons, a dentist. (Doc. 20 at ¶ 10.) When asked, Bowers informed Dr. Clemmons that his teeth had been in that condition for two days. Bowers alleges that Dr. Clemmons then told the transporting deputy that if Bowers had been seen by the dentist on the day the attack happened, there would have been a "better chance of saving [his] teeth." (Doc. 1.) Dr. Clemmons placed Bowers's teeth in braces to straighten them. (Doc. 20 at ¶ 11.) He also prescribed Ibuprofen and Hydrocodone to be taken alternatively every four to six hours. (Doc. 20 at ¶ 12.)

Bowers did not begin receiving the prescribed medications for two days. (Doc. 1.) On February 15, 2004, he began receiving Ibuprofen, but he was not receiving the hydrocodone. (Doc. 20 at ¶¶ 13-14.) On February 18, 2004, Bowers submitted a medical request stating that

he did not believe he was receiving the proper medications since returning from the dentist. (Doc. 20 at ¶ 15.) On that same day, he met with Nurse White, who informed Bowers that his hydrocodone prescription had been "pulled" because he had not been requesting the drug, and that he would only receive the hydrocodone when he asked for it. (Doc. 20 at ¶ 17.) Bowers agrees that Nurse White pulled the hydrocodone prescription on February 17, 2004, but disagrees that he had not been requesting the medication. (Doc. 20 at ¶ 14.) Bowers states that he requested hydrocodone from Deputy Clark on February 13 and 16, from Deputy Schuch on February 14 and 15, from Deputy Stichcome (who is not a defendant) on February 17 and 18, and from Deputy Dunn (who is not a defendant) on February 17. (Doc. 20 at ¶ 22.) Beginning on February 19, 2005, Bowers began receiving the prescribed hydrocodone, and he received numerous doses of Ibuprofen and hydrocodone until March 3, 2004. (Doc. 20 at ¶¶ 18-19.)

While Bowers agrees that he did not lose any teeth as a result of the two-day delay in being examined and treated by the dentist (Doc. 20 at ¶ 20), he disagrees with the defendants' contention that he cannot provide any medical evidence that the two-day delay adversely affected his prognosis. (Doc. 20 at ¶ 21.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts,

by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

The plaintiff here contends that his constitutional rights were violated in two ways. First, he claims that defendants were deliberately indifferent to his serious medical needs in failing to seek medical care immediately after the altercation. Second, he asserts that the defendants were deliberately indifferent to his serious medical needs by failing to provide prescription pain medications after he received the prescriptions.

In this case, the plaintiff was a pretrial detainee. Thus, his claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004). "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) (analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than

negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

AO72A
(Rev. 8/82)

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Where a plaintiff is alleging that the deliberate indifference is shown through a delay in seeking treatment, the Eighth Amendment is violated only where the "defendants ignored an acute or escalating situation involving a serious medical condition." *See Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990). Here the plaintiff was subjected to a two-day delay in getting to see a dentist concerning his teeth. According to the plaintiff, when Dr. Clemmons examined him, the doctor stated that the delay could have resulted in the plaintiff losing his teeth. The defendants argue that there is no evidence that the delay affected his prognosis, however due to the alleged statements made by the dentist, there is a genuine issue of material dispute in this matter.

Also, the plaintiff states that it took two days before he began receiving prescribed ibuprofen medication and six days before he began receiving prescribed hydrocodone. The plaintiff claims that he made a request each day for the hydrocodone, but that the defendants failed to provide it to him. Again, a material issue is in dispute as to whether the defendants failed to follow a prescribed course of treatment for the plaintiff. *See Estelle*, 429 U.S. at 104-05 (deliberate indifference may be manifested by officials intentional interference with prescribed treatment).

### IV. Conclusion

Therefore, I recommend that defendants' motion (Doc. 16) for summary judgment be denied.

**The parties have ten days from receipt of this report and recommendation in which**

AO72A
(Rev. 8/82)

**to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of December 2005.

/s/ Beverly Stites Jones
_____
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)