IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DONALD LEE BOWERS                                                PLAINTIFF

v.                  Civil No. 04-2102

DEPUTY STATEN;
DEPUTY SCHUCH;
CORPORAL GIBSON; and
DEPUTY CLARKE                                               DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Donald Lee Bowers, a former inmate of the Sebastian County Detention Center, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Bowers contends the defendants failed to provide him with adequate medical or dental care.

On March 28, 2006, an evidentiary hearing was held. At the conclusion of the hearing, the case was taken under advisement pending preparation of this report and recommendation.

### I. EVIDENCE PRESENTED

At the evidentiary hearing, the court heard the testimony of a number of witnesses. For purposes of discussion, the court will summarize in the first person the testimony given.

***Donald Lee Bowers***

I'm thirty-seven years old. I was booked into the Sebastian County Detention Center (SCDC) on January 11, 2004. I was there on charges of aggravated robbery and possession of

-1-

AO72A
(Rev. 8/82)

methamphetamine. I was a pretrial detainee. I was sentenced to a term of imprisonment and transferred to the Arkansas Department of Correction (ADC) on October 1, 2004.

On February 11, 2004, I was attached by another inmate. He beat me. There were multiple blows to my mouth. He beat my front teeth out. It is all a blur to me. I'm not sure how long the incident took. The inmate who attacked me was charged with an offense.

I notified Staten I had been attacked. I asked if I could see the nurse. Staten called the control room. He was asked to bring me to the booking area. Once there, Gibson came out of the control room and said I didn't need to see the nurse that I only had a black eye. I told Gibson my front teeth were loose. He told me to go back to the pod.

On February 12th I submitted a written request to see the nurse. On February 13th my Mother came to visit me. She broke into tears at the sight of me. She couldn't believe I hadn't been seen by a nurse. My face was black and blue.

Nurse White saw me on the 13th. I was then taken to the booking area and seen by Conger, Crouch and Jackson. Conger had not been aware of the incident until then. They said to take pictures. I was then taken to a dentist. I never went to the emergency room.

I was examined by the dentist, Dr. Clemmons on February 13th. He reloosened my teeth, realigned them, and put them in braces. Dr. Clemmons made a statement to Staten that if I had been brought in the day it had happened there would be less chance of my losing the teeth.

This was the first time I had ever had braces. I had never before been told I needed them. It was three or four days after I got the braces on before I could eat. Dr. Clemmons requested

AO72A
(Rev. 8/82)

that I be put on a liquid diet and that was done. I haven't lost any teeth as a result of this incident.

I was prescribed Ibuprofen and Hydrocodone. I was supposed to receive it every four to six hours. I didn't receive it until three days later. I believe it was a Monday. I may have started getting the Ibuprofen on the 15th.

I submitted a grievance on February 18th. *Plaintiff's Exhibit* (hereinafter *Plff's Ex.*) 1. I stated I was not receiving my medication. I had started receiving the Ibuprofen but not the pain medication. The jailers said there was no card in the pill box for the pain medication. Nurse White said I had to request it. But I had been requesting it. I was just told there was no card in the pill box. From February 19th until March 3rd, I received numerous doses of both medications. I was a lot better by March 3rd.

The delay in being examined harmed me. I spent almost three days in pain. When I asked the guards about the nurse they would say she was not in or had already left. I couldn't eat or drink anything. My mouth was almost swollen shut.

The delay in getting the pain medication caused me to suffer. I needed the Hydrocodone. The Ibuprofen only lessened the pain mildly. The Hydrocodone pretty much knocked the pain right out.

Schuch told me for two days, February 11th and 12th, that the nurse was not in. I think he was just putting me off. He could also have informed me about the proper procedure for seeing her.

AO72A
(Rev. 8/82)

Gibson looked at me and said I just had a black eye. He didn't make an incident report. I think he is a supervisor.

Staten could have informed me of the proper procedure for putting in medical requests. I didn't know how to do it. He also took me up to see Gibson.

Clark was on the midnight shift. He kept telling me there was no card in the pill box for the Hydrocodone. I was told there was a card there and the pills were there and that I didn't ask for them but I did.

On February 20, 2004, I went to the nurse's station. I requested treatment for facial acne. She put in a request to the hospital for my medical records. I asked the nurse if my Mother could bring my acne medication and she allowed it.

I understand now that I could have put in a medical request. Most of the time when I asked for medical care I got it. But the jailers violated the policy.

### *Dr. Ward W. Clemmons*

I'm a dentist. I practice family dentistry.

On February 13, 2004, I saw Bowers in my old office. He had a few front teeth, one in particular, that were luxated out of socket. I applied braces for periodontal splinting–to fix the teeth in place.

Overall his teeth were in pretty good shape. Many people who use methamphetamine fail to care for their teeth properly. Additionally the drug increases the acidic environment in the mouth and causes other potential problems. Bowers didn't show any evidence of this.

AO72A
(Rev. 8/82)

I try to treat everyone in my practice the same. I do not recall making any kind of statement that if Bowers had been brought in before it would have increased the chances of his not losing any teeth. The affect of a delay in treatment depends on the severity of the condition with the tooth. In this case, how much the tooth was luxated. In his case, I'm quite surprised the teeth are still viable and he has not had to have any root canals. Most of the time, the sooner the work is done after an injury the better it is.

He could have been sore from the braces being put on his teeth and from the blunt force trauma from the altercation. I had to realign the teeth and force them back into their sockets. His teeth, bone, and periodontal ligament would have been sore.

Hydrocodone is a Schedule II narcotic. I rotate the Hydrocodone and a non-prescription anti-inflammatory such as Motrin. You don't do it continuously but for twenty-four to forty-eight hours it is good.

I know he had a puffy lip and looked like he had been in a fight. I recall scratches and puffy lips but do not recall a black eye. I'm pleased he didn't have anything more difficult. I'm happy it took and the teeth didn't devitalize and abscess. I hope they remain asymptomatic and vital.

### *Treva Quillman*

I live in Arkoma. I'm Donald Bowers' Mother.

I made regular weekly visits while he was in jail. When I saw him after the fight, it scared me out of my wits. He tried to tell me what happened. His mouth was swollen. His face was swollen. There was so much noise it was hard for me to understand.

AO72A
(Rev. 8/82)

I called my grandson and he called to see what had happened. Nothing had been recorded. My grandson talked to someone at the jail and they checked it out and found out what happened.

I don't personally know about the dentist visit or the medication. I only know what I was told.

### *Deputy Jason Clarke*

I worked at the SCDC from May 25, 2003, until July 17, 2005. I worked the midnight shift.

I don't recall Bowers prior to the time he had been to the dentist. I do recall him being moved to protective custody because he had braces on.

We passed out medication at set hours during the day. We gave out the medication as prescribed. There was a medication card and the inmate would sign the card and the deputy would initial the card. If the medication stated it was to be given "if requested," the medication was not passed out unless an inmate specifically asked for it. If the inmate did specifically ask for it, the medication was passed out and it was noted on the medication log.

### *Deputy Schuch*

I started at the SCDC on May 24, 2003. In February of 2004 I was a deputy. I'm now a lance corporal.

I recall Bowers asking to see the nurse. I was performing my final head count at 5:30 to 6:00. He said he needed medical attention. The nurse was not there. He asked to be taken to the hospital.

AO72A
(Rev. 8/82)

Bowers appeared to be in discomfort but not pain. He didn't ask for Tylenol. He showed me his teeth and gums. He lifted his lip up at the top left. He had a small amount of blood around the gum. I don't recall his face. I knew he had been in a fight.

I told Bowers I would tell my supervisors. I told Georgia Brown and Justin Ritter. They asked if Bowers needed emergency treatment. I said not in my opinion. They said they would talk to nurse who would be there on the 13th.

### *Corporal James Gibson*

I left the SCDC in June of 2005. I worked there for thirteen years.

I recall the incident with Bowers. Staten called on the radio. He said there had been a fight. I told Staten to bring Bowers to the hallway. I looked at Bowers. I said he was going to have a black eye. He opened his mouth. I didn't see anything. I didn't touch his teeth.

The nurse wasn't there. I told Staten to give Bowers a medical request so he could see the nurse the next day. After this, I was off for four days. I had no other involvement in connection with this incident.

### *Gayla Lynn Jackson*

I've been at the SCDC a little over ten years. I'm a lieutenant. I am an administrator. My supervisor is Captain Conger. I'm like an assistant jail administrator.

I have no personal knowledge about anything having to do with Bowers being involved in a fight or seeking medical care. I keep the records for the detention center.

The nurse writes anything pertaining to health. The deputies do hand out the medication. The medication log is initialed by the deputy and the inmate.

AO72A
(Rev. 8/82)

*Crystal White Reed*

I'm a registered nurse. I am one of the nurses at the SCDC. I usually work 7:00 a.m. to 3:00 p.m. Monday through Friday. I'm on call after that for emergencies.

Bowers was brought to me on February 13th. I looked at the injuries he sustained in a fight two days before.

Bowers had a black eye and the left side of his jaw was swollen. He went to the emergency room for further evaluation and from there was referred to Dr. Clemmons. Bowers was seen by Dr. Clemmons the same day.

I wrote a medical treatment report that day. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 4 at page 3. The bottom has copies of the receipts for his medication that was obtained the same day. *Id.*

On February 17th, Bowers' narcotic pain medication was pulled because he had not been requesting the pills. He was given Ibuprofen. *Defts' Ex.* 4 at page 5. The deputies inform us if the inmates are not requesting the medication that is prescribed on an "as needed" basis. I believe the narcotic pain medication was prescribed on an as needed basis.

After the narcotic medication was pulled, I got a verbal request for it. On February 18th, I authorized Bowers to have the Hydrocodone. *Defts' Ex.* 4 at page 6.

On February 20th, I realized that the Hydrocodone was supposed to be rotated with the Ibuprofen. *Defts' Ex.* 4 at page 7. I told Dr. Clemmons' office that it had not been given right but it would be straightened out. Initially, Bowers had been given Ibuprofen each time and the narcotic medication was pulled because he had not requested it. Then after he complained that

the Ibuprofen was not working as well and had asked for something else, I authorized him to have the Hydrocodone again. Dr. Clemmons' office said to go ahead and use Hydrocodone.

### *Sergeant Robert Dale Crouch*

I'm a sergeant with the SCDC. I recall speaking with someone about Bowers. It was my first day on. It was early that morning. I received a call that Bowers had been involved in an altercation. I didn't see an incident report.

I called Bowers up. He had a swollen eye and mouth. I asked what happened. Conger and Jackson were there. Bowers said Thorin Henley did it.

I believe this was on February 13th. I had Bowers prepared to go to the emergency room or to Dr. Clemmons' office. On February 13th I also turned over a report to charge Henley with third degree battery.

On February 20th, Conger asked me to speak with Bowers about a letter he had written. *Defts' Ex.* 11. Bowers asked for protective custody. *Id.* He stated he intended to sue over the fact that he had been hurt by Henley and had been denied treatment for the two days following the attack. *Id.* I told him his medications had been obtained and logged. *Id.* I sent him to protective custody. *Id.*

### *Captain Conger*

I'm the jail administrator at the SCDC. I was informed of the assault on Bowers and the injuries he sustained a couple of days after it occurred. Bowers was brought up front. He was puffy and had a black eye. We proceeded to get Bowers to the emergency room. I asked Crouch to investigate the incident and refer the attacker to the prosecutor.

-9-

## II. DISCUSSION

As Bowers was a pretrial detainee at the relevant time, his denial of medical care claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004). "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)(analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to

AO72A
(Rev. 8/82)

> medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

We conclude Bowers has failed to establish that any of the named defendants exhibited deliberate indifference to his serious medical or dental needs. Although Bowers' condition with his teeth obviously required treatment, as is evidenced by the measures taken by Dr. Clemmons, Bowers presented no evidence that the defendants ignored an acute or escalating situation or that the delay in his receiving treatment adversely affected his prognosis. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Beyerback v. Sears*, 49 F.3d 1324, 1327 (8th Cir. 1995)(inmate's failure to present verifying medical evidence constituted failure to establish objective component of the claim). While Dr. Clemmons testified that in general it is always better for treatment to be rendered quickly after an injury, he stated that he was not only able to treat Bowers but that the treatment went extremely well from the standpoint that Bowers' teeth remain vital and no further care has been needed. This failure to show that a delay in medical treatment adversely affected his prognosis or condition is fatal to his claim.

With respect to the medication, the receipts indicate the medication was obtained promptly. It does appear for some reason Bowers did not begin receiving the Ibuprofen until February 15th. *Defts' Ex.* 6. However, there is no indication that any of the named defendants were responsible for this failure. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts,* 909 F.2d 1203, 1208

-12-

(8th Cir. 1990). *See also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence the defendants were medical personnel or were personally involved in making medical decisions about the plaintiff's treatment); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)(section 1983 liability requires personal involvement, or allegation that supervisor had knowledge of unconstitutional conduct and turned blind eye to it).

There are notations the medication log to the effect that Bowers did not request the Hydrocodone on February 15th through February 17th. *Defts' Ex.* 6 at page 2. While Bowers contends he did request the medication and was told it was not in the pill box, the nurse's testimony was that she made the decision to pull the narcotic pain medication for this reason. Although the decision could have been based on a misunderstanding, it is clear the decision was not made by any of the named defendants. Nor was there any evidence that the nurse's decision was based on the input of any of the named defendants. After she spoke with Bowers, he began receiving the Hydrocodone on February 19th. *Defts' Ex.* 6 at page 1. There is simply no evidence on which to find defendants liable under § 1983.

## IV. CONCLUSION

I therefore recommend that judgment be entered in defendants' favor and this case be dismissed.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

-13-

AO72A
(Rev. 8/82)

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of April 2006.

/s/ Beverly Stites Jones
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)